1

2   Mark A. Schadrack (CA SBN 120171)
    SCHADRACK & CHAPMAN, LLP
3   28202 Cabot Road, Suite 300
    Laguna Niguel, CA 92677
4   Phone (949) 498-3203
    Fax (949) 365-7098

5   Allan E. Anderson (CA SBN 133672)
    ROPERS, MAJESKI, KOHN & BENTLEY
6   515 South Flower Street, Suite 2100
    Los Angeles, CA 90071
7   Phone (213) 312-2000
    Fax (213) 312-2001
8
9   Attorneys for Plaintiff, Counter-Defendant and
    Third-Party Defendant CYCLONE USA, INC. dba
    TORNADO AIR MANAGEMENT SYSTEMS
10  and Third-Party Defendant JAY KIM

11

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15

16

17  CYCLONE USA, INC., a Nevada          Case No.  CV 03-0992 AJW
    corporation,
18
                                         **PLAINTIFF'S BRIEF REGARDING**
19            Plaintiff,                  **THE FURTHER ACCOUNTING;**
                                         **SUPPORTING DECLARATION OF**
20  v.                                   **DARYL MARTIN**

21  LL&C DEALER SERVICES, LLC, a
    California corporation, et al.
22
                                         Date:      May 20, 2008
23            Defendants.                Time:      10:00 a.m.
                                         Ctrm:      690
24  ─────────────────────────────────

25  AND RELATED COUNTER-
    COMPLAINT AND THIRD-PARTY
26  COMPLAINT

27

28

                              1

## I.   **BACKGROUND.**

On November 8, 2007, the Court issued a detailed Memorandum of Decision. Among other things, the Court ruled in favor of plaintiff on its federal trademark infringement and counterfeiting claims against Sei Kim and LL&C.  (Memorandum of Decision at pages 4-30 and 49-55.)  With respect to damages, the Court accepted plaintiff's computation of 2003 profits and Poron-related profits, as well as plaintiff's "request for an accounting of LL&C's profits from January 1, 2004 to the present . . . ."  (Memorandum of Decision at page 22, lines 15-18.)

The parties to this case agreed to submit the further accounting to the Court through briefing and declarations, in lieu of live testimony.  (Stipulation and Proposed Scheduling Order filed on or about January 18, 2008.)  In its Order, dated January 22, 2008, the Court accepted the parties' proposed briefing schedule.

## II.   **GENERAL LEGAL PRINCIPLES.**

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  15 U.S.C. § 1117(a)(3).  "Any doubts about the actual amount profits will be resolved against the infringer."  *H-D Michigan, Inc. v. Bikers Dream, Inc.*, 48 U.S.P.Q.2d 1108 (C.D. Cal. 1998) (citing *Louis Vuitton, S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 972-973 (2nd Cir. 1985); McCarthy on Trademarks § 30:66 (4th ed. 1998)).

Certain costs are not deductible.  For example, attorney fees and costs

incurred in the trademark case are not deductible. *Wolfe v. National Lead Co.*, 272 F.2d 867, 873 (9th Cir. 1959) (citing *Duro Co. v. Duro Co.*, 56 F.2d 313 (3rd Cir. 1932); *Champion Spark Plug Co. v. Sanders*, 108 F. Supp. 674 (E.D.N.Y. 1952)), *overruled on other grounds by Maier Brewing Co. v. Fleischmann Distilling Corp.*, 359 F.2d 156 (9th Cir. 1966), *cert. denied*, 362 U.S. 950 (1960).

### III.    LL&C'S PROFITS.

Attached hereto as Exhibit A, is a true and correct copy of a report prepared by the damages expert witness who testified on behalf of plaintiff at the trial (Daryl Martin). Mr. Martin has concluded LL&C's profits from the sale of infringing products during the period at issue (2004-2007) are $449,219. (Exhibit A at page 4.)

As set forth in the Court's Memorandum of Decision, "Sei Kim directly and contributorily infringed Cyclone USA's trademarks during the period when the contract between Sei Kim and LL&C was in force. Therefore, to the extent that LL&C is liable to Cyclone USA for trademark infringement during that time, Sei Kim is also personally liable to Cyclone USA." (Memorandum of Decision at page 53, lines 10-14.) All of the fuel saving devices, upon which the further accounting is based, were sold to LL&C by Sei Kim. (Largent Deposition transcript, page 5,

line 23 through page 7, line 4.)[1] Thus, Sei Kim is personally liable for the additional damages described in Mr. Martin's supplemental report.

## IV.   CONCLUSION.

Based on the above, plaintiff respectfully requests an award of further profits in the amount of $449,219, plus interest.


Dated:    March 19, 2008                    SCHADRACK & CHAPMAN, LLP


                                            By: _Mark A. Schadrack_
                                            MARK A. SCHADRACK
                                            Attorneys for Plaintiff, Counter-
                                            Defendant and Third-Party Defendant
                                            CYCLONE USA, INC. dba
                                            TORNADO AIR MANAGEMENT
                                            SYSTEMS and Third-Party
                                            Defendant JAY KIM

---

[1] A true and correct copy of the relevant excerpts from Mr. Largent's deposition transcript are attached hereto as Exhibit B.

## DECLARATION OF DARYL MARTIN

1.      I oversee the valuation division at CONSOR Intellectual Asset Management in La Jolla, California.  I have over 10 years of financial analysis and valuation experience.  Details regarding my experience are set forth in Appendix A of the report described below.

2.      Attached hereto as Exhibit A is a true and correct copy of my Supplemental Report in this action.  As set forth in my report, it is my professional opinion that LL&C's profits from the sale of infringing products from 2004-2007 were $449,219.  (Exhibit A at page 2.)

3.      In order to calculate the profits, I first determined the net revenues generated from the sale of the Tornado fuel savers.  (Exhibit A at page 3.)

4.      Next, I analyzed LL&C's reported expenses and determined certain adjustments should be made.  (Exhibit A at pages 3-4.)

5.      After making adjustments for entertainment expenses, fuel expenses and legal expenses, I calculated adjusted net profit for each of the four years at issue.  (Exhibit A at page 5.)  Adding the adjusted net profit for each of the four years yields the total sum of $449,219.

6.      I also calculated interest accrued to date on the foregoing amount, as well as the amounts already awarded on the infringement claims.  (Exhibit A at pages 5-6.)  Additionally, I have determined the daily rate of interest that will continue to accrue on a going forward basis.  (Exhibit A at page 7.)

7.    Attached hereto as Exhibit B are true and correct copies of excerpts from the deposition transcript of LL&C's managing member (Randy Largent).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  March 19, 2008

Daryl Martin

ALLAN E. ANDERSON (SBN 133672)
TIMOTHY L. SKELTON (SBN 200432)
ROPERS, MAJESKI, KOHN & BENTLEY
515 South Flower Street, Suite 1100
Los Angeles, CA  90071
Telephone:   (213) 312-2000
Facsimile:   (213) 312-2001
aanderson@rmkb.com
tskelton@rmkb.com

MARK A. SCHADRACK (SBN 120171)
SCHADRACK & CHAPMAN, LLP
28202 Cabot Road, Suite 300
Laguna Niguel, CA 92677
Telephone: (949) 498-3203
Facsimile: (949) 365-7098

Attorneys for CYCLONE USA, INC. and Third-
Party Defendant JAY KIM

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYCLONE USA, INC, <br><br>     Plaintiff, <br><br> v. <br><br> LL&C DEALER SERVICES, LLC, et al., <br><br>     Defendants. | Case No.  CV 03-0992 AJW <br> Hon. Andrew J. Wistrich <br><br> **EXHIBIT A TO PLAINTIFF'S BRIEF REGARDING THE FURTHER ACCOUNTING** |
| AND RELATED COUNTER-COMPLAINTS AND THIRD-PARTY COMPLAINT | Date:   May 20, 2008 <br> Time:   10:00 a.m. <br> Ctrm:   690 |

**(FILED UNDER SEAL PURSUANT TO THE ORDER OF THE COURT)**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYCLONE USA, INC., | ) | **Certified Copy** |
| PLAINTIFF, | ) | |
| VS. | ) | NO. CV 03-0992 AJW |
| LL&C DEALER SERVICES, LLC, | ) | |
| ET AL., | ) | |
| DEFENDANTS. | ) | |

AND RELATED COUNTER-COMPLAINTS     )

AND THIRD-PARTY COMPLAINT.     )

DEPOSITION OF RANDY LARGENT

TUESDAY, MARCH 11, 2008

REPORTED BY:

DENISE J. PAGANO

CSR NO. 7233, RPR



WATSON
COURT REPORTERS

1545 Sawtelle Blvd. Suite 26 Los Angeles CA 90025
phone 310.231.4333 or 800.373.0888 fax 310.231.4332
www.watsoncsr.com

**EXHIBIT B**




EXHIBIT B, PAGE 41

Page 5

1          IF YOU MAKE ANY CHANGES OR CORRECTIONS TO YOUR

2     TESTIMONY, THAT COULD HAVE A NEGATIVE IMPACT ON YOUR

3     BELIEVABILITY AS A WITNESS.

4          DO YOU UNDERSTAND THAT?

5     A    YES.

6     Q    AND AS A RESULT OF THAT, IT'S IMPORTANT THAT YOU

7     UNDERSTAND MY QUESTIONS, AND THAT IF YOU DON'T UNDERSTAND

8     THEM, YOU LET ME KNOW.

9          IF YOU DON'T SAY ANYTHING, I'M GOING TO ASSUME THAT

10    YOU UNDERSTOOD THE QUESTION, OKAY?

11    A    YES.

12    Q    WHAT'S YOUR CURRENT POSITION AT LL&C?

13    A    MANAGING PARTNER.

14    Q    IS THERE MORE THAN ONE MANAGING PARTNER, OR ARE YOU

15    THE ONLY MANAGING PARTNER?

16    A    I'M THE ONLY ONE.

17    Q    AND BY THAT, DO YOU MEAN MANAGING MEMBER?

18    A    YES.

19    Q    ARE YOU STILL A 60 PERCENT OWNER OF LL&C?

20    A    YES.

21    Q    AND IS MR. CHALDEKAS A 40 PERCENT OWNER STILL?

22    A    YES.

23    Q    FROM THE BEGINNING OF 2004, UP UNTIL THE PRESENT,

24    WHO WERE YOU PURCHASING THE PRODUCTS YOU SOLD UNDER THE

25    TORNADO FUELSAVER NAME FROM?

WATSON COURT REPORTERS
(800) 373-0888

EXHIBIT B, PAGE 42

Page 6

1      A    SEI KIM.

2      Q    HAS THAT EVER CHANGED DURING THAT TIME PERIOD, 2004

3  UP TO THE PRESENT?

4      A    NO.

5      Q    AT ONE POINT, THERE WAS A WRITTEN CONTRACT BETWEEN

6  YOUR COMPANY AND SEI KIM.

7           WAS THAT CONTRACT EVER MODIFIED OR REPLACED --

8      A    UM --

9      Q    -- OR EXTENDED?

10     A    THERE WERE SEVERAL MINOR ADDITIONS TO THE CONTRACT

11 THAT BASICALLY ADDRESSED THE NUMBER OF UNITS THAT WE WOULD

12 BUY FROM HIM, BUT THAT WAS REALLY -- YOU KNOW, THERE WERE

13 JUST KIND OF ONE OR TWO PAGES.

14     Q    WHAT I'M MORE INTERESTED IN IS WHETHER THERE WAS

15 ANY SORT OF AN EXTENSION OF THAT AGREEMENT.  I DON'T RECALL

16 THE DATE THAT IT EXPIRED, BUT I KNOW IT'S BEFORE TODAY, AND

17 I'M WONDERING --

18     A    I THINK IT'S EXPIRED.

19     Q    DO YOU RECALL WHEN IT EXPIRED?

20     A    NO, I REALLY DON'T.

21     Q    WAS THERE ANYTHING IN WRITING TO EXTEND THE

22 AGREEMENT AFTER IT EXPIRED?

23     A    NO.

24     Q    WAS THERE EVER A NEW AGREEMENT WRITTEN?

25     A    NO.

EXHIBIT B  PAGE 43

Page 7

1      Q      ARE YOU SAYING THAT, REGARDLESS OF THE EXPIRATION

2   OF THE ORIGINAL AGREEMENT, YOUR COMPANY CONTINUED TO

3   PURCHASE THOSE UNITS FROM SEI KIM'S COMPANY?

4      A      YES.

5      Q      OKAY.  HOW ARE YOU AND MR. CHALDEKAS COMPENSATED

6   FROM LL&C?

7      A      INFREQUENTLY.  I'M NOT -- WHAT -- I'M SORRY.  I'M

8   NOT UNDERSTANDING WHAT YOU'RE --

9      Q      WHAT I'M TRYING TO FIND OUT IS HOW YOU AND

10   MR. CHALDEKAS GET PAID BY LL&C, IF ANYTHING?

11      A      IF THERE IS MONEY THERE, MY BOOKKEEPER WRITES A

12   CHECK.  I TELL HER TO WRITE A CHECK, AND SHE WRITES A CHECK.

13      Q      IS THAT IN THE FORM OF DRAWS?

14      A      I SUPPLIED A LIST THAT SHOWED -- AND, FRANKLY, I'M

15   NOT SURE.  SOME OF THEM WERE DRAWS.  SOME OF THEM SHOWED --

16   WE PUT QUITE A BIT OF MONEY IN THE COMPANY.  I THINK IT WAS

17   '03, '04 OR '05, SO A PORTION OF IT WAS A RETURN, A

18   REPAYMENT OF LOAN, AND A PORTION OF IT WAS DRAWS, BUT THAT'S

19   OUTLINED AS -- I THINK IN THAT REPORT THAT I GAVE YOU.

20      MR. SCHADRACK:  LET'S GO OFF THE RECORD FOR A SECOND.

21            (DISCUSSION OFF THE RECORD.)

22      MR. SCHADRACK:  OKAY.  LET'S GO BACK ON THE RECORD.

23            I'M GOING TO ASK THE REPORTER TO MARK AS

24   EXHIBIT NUMBER 1 A DOCUMENT, WHICH IS A SIX-PAGE DOCUMENT,

25   WHICH ACTUALLY CONSISTS OF TWO DOCUMENTS; AND THE FIRST ONE

EXHIBIT B, PAGE 44

Page 12

1    BY MR. SCHADRACK:

2        Q    WOULD YOU PLEASE TAKE A LOOK AT EXHIBIT NUMBER 2

3    AFTER IT HAS BEEN MARKED BY THE COURT REPORTER.

4             DO YOU RECOGNIZE THIS DOCUMENT?

5        A    YES.

6        Q    AND WHAT DOES THIS DOCUMENT REFLECT?

7        A    LEGAL FEES.

8        Q    FROM 2004 THROUGH 2007?

9        A    YES.

10       Q    FOR LL&C?

11       A    YES.

12       MR. SCHADRACK:  I'D LIKE THE REPORTER TO MARK AS

13   EXHIBIT NUMBER 3 A DOCUMENT ENTITLED, "LL&C DEALER SERVICES"

14   COMMA "LLC PROFIT AND LOSS JANUARY 2004 THROUGH DECEMBER

15   2007."  IT'S A THREE-PAGE DOCUMENT.

16            (PLAINTIFF'S EXHIBIT 3 WAS MARKED FOR

17            IDENTIFICATION BY THE COURT REPORTER.)

18   BY MR. SCHADRACK:

19       Q    PLEASE TAKE A LOOK AT EXHIBIT NUMBER 3 AFTER IT HAS

20   BEEN MARKED BY THE COURT REPORTER.

21            IF YOU LOOK ON PAGE 2 OF EXHIBIT NUMBER 3 -- LET ME

22   BACK UP.

23            THIS EXHIBIT NUMBER 3 IS THE PROFIT AND LOSS

24   STATEMENT FOR LL&C FROM JANUARY OF '04 THROUGH DECEMBER OF

25   2007, CORRECT?

EXHIBIT __, PAGE 45

Page 13

1      A    YES.

2      Q    TAKE A LOOK AT PAGE 2 TOWARD THE MIDDLE UNDER,

3    "PROFESSIONAL FEES."   THERE ARE LEGAL FEES.

4           DO YOU SEE THAT?

5      A    YES.

6      Q    AND THERE IS A NUMBER THERE OF APPROXIMATELY

7    $741,000.

8           DO YOU SEE THAT?

9      A    YES.

10     Q    BUT ON EXHIBIT 2, THE TOTAL AMOUNT OF LEGAL FEES IS

11   ONLY APPROXIMATELY 344,000.

12          DO YOU SEE THAT ON PAGE 4?

13     A    I'M SORRY.   WHERE ARE WE LOOKING?

14     Q    ON EXHIBIT 2, THE TRANSACTION DETAIL BY ACCOUNT.

15     A    RIGHT.

16     Q    DO YOU KNOW WHY THERE IS THAT LARGE OF A DIFFERENCE

17   BETWEEN THE LEGAL FEES REFLECTED ON THE PROFIT AND LOSS

18   STATEMENT AND THE TRANSACTION DETAIL BY ACCOUNT?

19     A    NO.

20     Q    WHAT PORTION OF THE LEGAL FEES LISTED IN THE PROFIT

21   AND LOSS STATEMENT APPLY TO THE TORNADO LITIGATION?

22     A    KIND OF A ROUGH GUESS, BUT I'D SAY ABOUT

23   80 PERCENT, 80, 85 PERCENT.

24     Q    THAT'S A ROUGH ESTIMATE?

25     A    YEAH, I THINK THAT'S ABOUT APPROXIMATELY RIGHT.

EXHIBIT B, PAGE 46

Page 14

1      Q    LET'S TAKE A LOOK AT EXHIBIT 2 FOR A MINUTE.

2           THE MEMO PORTION IS CUT OFF A LITTLE BIT, BUT WE

3    CAN SEE PART OF THAT ON THERE, AND I'D JUST LIKE TO KIND OF

4    RUN THROUGH THAT A LITTLE BIT.

5           THE FIRST --

6      A    WHICH?  I'M SORRY, MARK.  WHICH ONE IS 2?

7      Q    EXHIBIT 2, THE DETAIL BY ACCOUNT.

8      A    THIS ONE?

9      Q    LEGAL FEES.

10          YES.

11     A    OKAY.  I'M SORRY.

12     Q    THAT'S ALL RIGHT.

13     A    UH-HUH.

14     Q    OKAY.  THE FIRST ENTRY, "ANDREW KIM & ASSOCIATES,

15   CLIENT TRUST ACCOUNT," THERE IS A REFERENCE TO "JAY KIM

16   LAWSUIT" --

17     A    UH-HUH.

18     Q    -- IN THE MEMO SECTION.

19     A    UH-HUH.

20     Q    WHAT DOES THAT REFER TO?

21          IS THAT THE TORNADO LITIGATION?

22     A    I ASSUME SO, YES.

23     Q    THEN THE NEXT ITEM REFERS TO "BOND SERVICES OF

24   CALIFORNIA LLC."

25          WHAT'S THAT REFERRING TO?

EXHIBIT B PAGE 47

Page 15

```
 1      A     WE HAD TO HAVE A BOND.

 2      Q     OH, IS THAT FOR THE PRELIMINARY INJUNCTION?

 3            DO YOU KNOW?

 4      A     I BELIEVE SO, YEAH, SOMETHING LIKE THAT.

 5      Q     OKAY.  THE NEXT REFERENCE IS BOULT, B-O-U-L-T, WADE

 6   TENNANT, T-E-N-N-A-N-T.

 7            DO YOU SEE THAT?

 8      A     YES.

 9      Q     WHAT DOES THAT REFER TO?

10      A     THAT WAS FOR LEGAL WORK IN EUROPE.

11      Q     DID THAT HAVE ANYTHING TO DO WITH THE TORNADO

12   FUELSAVER DEVICE OR -- WHY DON'T YOU -- COULD YOU TELL ME

13   WHAT THAT WORK PERTAINS TO?

14            MAYBE THAT'S AN EASIER WAY TO --

15      A     THAT WAS FOR CYCLONE.

16      Q     WHEN YOU SAY, "CYCLONE," WHAT DO YOU MEAN BY THAT?

17      A     SEI KIM'S PRODUCT IS CALLED, "CYCLONE."

18      Q     AND WHAT TYPE OF LEGAL WORK WAS BEING DONE WITH

19   RESPECT TO THE CYCLONE PRODUCT?

20      A     I BELIEVE IT WAS TRADEMARK.

21      Q     LIKE A REGISTRATION OF A TRADEMARK?

22      A     YES, I BELIEVE THAT'S WHAT IT WAS.

23      Q     DOES LL&C -- LET ME RESTATE THE QUESTION.

24            DID LL&C EVER SELL UNDER THE TORNADO FUELSAVER NAME

25   IN THE UK?
```

EXHIBIT B, PAGE 48

Page 16

1      A      NOT THAT I'M AWARE OF.

2      Q      WAS IT ONLY THE CYCLONE OR CYCLONE FUELSAVER NAME?

3      A      YES.

4      Q      THE NEXT ENTRY IS FOR BURHENN & GEST, AND THE FIRST

5   SEVERAL ENTRIES REFER TO "LAWSUIT RE:"

6             DO YOU KNOW WHAT LAWSUIT THAT'S REFERRING TO?

7      A      THIS ONE.

8      Q      AND WHEN YOU SAY, "THIS ONE," YOU MEAN THE TORNADO

9   LITIGATION?

10     A      CYCLONE TORNADO, YES.

11     Q      AND THEN THERE IS AN ENTRY FOR TRUCK INSURANCE.

12            DO YOU SEE THAT?

13     A      YES.

14     Q      DO YOU KNOW WHAT THAT IS?

15     A      THERE WAS SOMETHING TO DO WITH TRUCK THAT HOWARD

16   DID A LITTLE BIT OF WORK ON.  I DON'T RECALL THE SPECIFICS

17   OF IT.

18     Q      DO YOU KNOW IF THAT WAS THE INSURANCE COVERAGE

19   LITIGATION THAT TRUCK COMMENCED IN STATE COURT?

20            I'M NOT ASKING YOU TO GUESS.

21     A      YEAH, I DON'T KNOW.  I REALLY DON'T KNOW.  I -- I

22   DON'T KNOW.

23     Q      THEN THERE IS A CASE NUMBER BC.

24            DO YOU KNOW WHAT THAT IS?

25     A      NO.

EXHIBIT B, PAGE 49

1       Q     AND THEN THERE IS REFERENCE TO "JAY LAWSUIT."

2             IS THAT THE SAME THING AS THE TORNADO --

3       A     YES.

4       Q     -- CYCLONE LITIGATION?

5       A     YES.

6       Q     THEN THERE IS TWO REFERENCES REGARDING -- I'M

7    SORRY.  LET ME BACK UP.

8             THERE IS -- THE NEXT ENTRY IS FOR JOHN MITCHELL?

9       A     UH-HUH.

10      Q     AND THERE IS A REFERENCE TO "COLLECTIONS" FOR

11   THAT.

12            DO YOU KNOW WHAT THAT IS?

13      A     WE HAD SOMEBODY THAT WE HAD SOLD SOME PRODUCT TO

14   THAT DIDN'T PAY US.

15      Q     WHAT TYPE OF PRODUCT?

16            WAS IT TORNADO FUELSAVER?

17      A     I THINK IT WAS FUELSAVERS AND MAYBE SOME -- SOME --

18   WE HAD THOSE LITTLE THINGS YOU SCREW ON YOUR TIRES TO TELL

19   YOUR TIRE PRESSURE.  I CAN'T THINK --

20      Q     TIRE MINDER?

21   MR. LANGLEY:  TIRE MINDER.

22   THE WITNESS:  TIRE MINDER, YEAH.

23   BY MR. SCHADRACK:

24      Q     THE NEXT ONE IS JOSEPH BERTROCHE,

25   B-E-R-T-R-O-C-H-E.

EXHIBIT B PAGE 50

Page 18

1          DO YOU KNOW WHAT THAT IS?

2     A    I THINK IT'S A SIMILAR THING.

3     Q    COLLECTION TYPE THING?

4     A.   I THINK SO, BUT I CAN'T RECALL.

5     Q    AND THEN THERE IS A HANDFUL OF ENTRIES WITH RESPECT

6   TO THE PROCOPIO FIRM.

7          DO YOU SEE THOSE?

8     A    YES.

9     Q    AND THOSE PERTAIN TO THE JAY KIM LAWSUIT; IS THAT

10  CORRECT?

11    A    YES.

12    Q    WHICH IS THE SAME THING AS THE TORNADO LITIGATION,

13  CORRECT?

14    A    YES.

15    Q    AND THEN THERE IS REFERENCES TO SIDLEY AUSTIN.

16         DO YOU SEE THOSE?

17    A    YES.

18    Q    AND THOSE REFER TO -- AFTER "JAY LAWSUIT," THERE IS

19  CLIENT NUMBERS.

20         DO YOU KNOW WHAT THOSE PAYMENTS ARE FOR?

21    A    THE -- THE -- WHEN WE WENT TO -- IN WASHINGTON, THE

22  APPEAL.  I DON'T RECALL WHAT -- WHAT -- HOW YOU REFER TO

23  THAT.

24    MR. LANGLEY:  APPEAL.

25    ///

EXHIBIT B, PAGE 51

Page 19

1    BY MR. SCHADRACK:

2        Q    SO SIDLEY AUSTIN WAS RETAINED BY LL&C FOR THE

3    APPEAL THAT WAS FILED IN THIS CASE?

4             IS THAT WHAT YOU'RE SAYING?

5        A    THE -- I BELIEVE IT WAS TRADEMARK, OR I DON'T

6    RECALL EXACTLY, BUT THERE WAS SOMETHING THAT WENT TO

7    WASHINGTON, AND HOWARD HAD SIDLEY & AUSTIN HANDLE IT.

8        Q    AND THAT WAS THE APPEAL IN THIS CASE, CORRECT?

9        A    I BELIEVE SO.

10       Q    THE ONE IN WASHINGTON?

11       A    YES.

12       Q    VAN DORN & MARSHAK, WHAT WERE THEY USED FOR?

13            IT LOOKS LIKE A LOT OF DIFFERENT THINGS.

14       A    A LOT OF DIFFERENT THINGS.

15       Q    WERE THEY USED FOR THIS CASE AT ALL?

16       A    VERY SMALL AMOUNT.

17       Q    AND CAN YOU TELL ME WHICH ITEMS ON HERE THAT WOULD

18   REFER TO?

19            IS IT INCLUDED IN THE MISCELLANEOUS STUFF?

20       A    I CAN'T REALLY TELL YOU WHICH ONES SPECIFICALLY

21   WOULD --

22       Q    WHAT ABOUT THE LAST ENTRY ON PAGE 2, "SEI

23   KIM/TSC"?

24            DO YOU KNOW WHAT THAT IS?

25       A    NO, I DON'T.

EXHIBIT B, PAGE 52

Page 20

1       MR. LANGLEY:  I DIDN'T SEE THAT ONE.

2       THE WITNESS:  (WITNESS INDICATING.)

3       MR. LANGLEY:  OH, LET ME SEE.

4       THE WITNESS:  SECOND PAGE.

5  BY MR. SCHADRACK:

6     Q   ON PAGE 3, ON 12/2/04, THERE IS A REFERENCE TO "SEI

7  KIM PROCO."

8       DO YOU SEE THAT ONE?  12/2/04?

9     A   12/2/04?

10     MR. LANGLEY:  THIS ONE.

11     THE WITNESS:  THAT ONE?

12  BY MR. SCHADRACK:

13     Q   IT'S THE SECOND 12/2/04 ENTRY.

14     A   RIGHT.

15     Q   DO YOU KNOW WHAT THAT ONE IS, THE "SEI KIM PROCO"?

16     A   NO.

17     Q   PARDON?

18     A   NO.

19     Q   THEN THERE IS SOME ENTRIES FOR VENABLE LLP.

20       WHAT WERE THEY USED FOR?

21     A   THOSE WERE COMPLIANCE ISSUES WITH REGARD TO THE

22  INFOMERCIAL.

23     Q   YOU MEAN THE TORNADO INFOMERCIAL?

24     A   YES.

25     Q   WHAT TYPES OF COMPLIANCE ISSUES?

EXHIBIT B, PAGE 53

Page 21

1        A    THERE IS A GOVERNING BODY IN NA -- THE NATIONAL

2   BROADCASTING -- I CAN'T RECALL -- THAT ALWAYS LOOKS AT

3   INFOMERCIALS.  THEY WILL COME IN, AND THEY'LL SAY, "WE WANT

4   MORE CLAIMS," OR "WE WANT YOU TO PUT SOME WORDING ON THERE

5   THAT DISCLAIMS WHAT YOU'RE SAYING."

6            IT'S FAIRLY COMMON, SO WE USE VENABLE TO HELP US

7   MAKE SURE WE WERE IN COMPLIANCE.

8        Q    AFTER "VENABLE LLP," THERE IS A FIRM, VENABLE

9   BAETJER --

10       A    YES.

11       Q    -- ET CETERA.

12            WHAT WERE THEY USED FOR?

13       A    THEY'RE THE SAME PEOPLE.

14       Q    WERE THEY USED FOR THE SAME THING AS FAR AS THESE

15   REFERENCES GO?

16       A    YES.

17       Q    OKAY.  AND THEN THERE IS WANDERER AND WANDERER.

18            WHAT WERE THEY USED FOR?

19       A    I HAVE NO IDEA.

20       Q    AND THEN, "WFB-M/C," DO YOU KNOW WHAT THAT IS?

21       A    WELL, IT LOOKS LIKE IT'S A BOND SERVICE PAYMENT

22   MADE ON A CREDIT CARD.

23       Q    DOES "M/C" REFER TO "MASTER CHARGE"?

24       A    YES.

25       Q    OR MASTERCARD?

EXHIBIT B, PAGE 54

Page 22

1          WHAT'S "WFB" STAND FOR?

2      A    WELLS FARGO BANK.

3          MR. SCHADRACK:   I'D LIKE THE REPORTER TO MARK AS EXHIBIT

4   NUMBER 4 A MULTIPLE-PAGE DOCUMENT ENTITLED, "REVENUE SPLIT"

5   ON THE FIRST PAGE.

6              (PLAINTIFF'S EXHIBIT 4 WAS MARKED FOR

7              IDENTIFICATION BY THE COURT REPORTER.)

8   BY MR. SCHADRACK:

9      Q    PLEASE TAKE A LOOK AT EXHIBIT NUMBER 2 AFTER IT HAS

10  BEEN MARKED BY THE COURT REPORTER.

11          DO YOU RECOGNIZE THIS DOCUMENT?

12     A    YES.

13     Q    WHAT DOES THIS DOCUMENT REFLECT?

14     A    IT BREAKS DOWN THE REVENUE, THE AREAS WHERE THE

15  REVENUE CAME FROM.

16     Q    SO IF WE LOOK AT ITEM NUMBER -- EXCUSE ME.  IF WE

17  LOOK AT YEAR 2004, THE FIRST LISTING OF THE REVENUE SPLIT --

18     A    UH-HUH.

19     Q    -- IT SAYS, "FULFILLMENT INCOME" APPROXIMATELY

20  $385,000.  THEN "NON-TORNADO" APPROXIMATELY $40,000.

21          DOES THAT MEAN THAT EVERYTHING OTHER THAN THE

22  APPROXIMATELY $40,000 FROM YOUR SALES INCOME WAS TORNADO --

23  WAS FROM TORNADO PRODUCTS?

24     A    WELL, SOME OF THE FULFILLMENT -- SOME OF THE

25  FULFILLMENT INCOME WOULD BE FROM TORNADO.  WE WEREN'T ABLE

EXHIBIT __, PAGE __