1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **CENTRAL DISTRICT OF CALIFORNIA**
10                        **WESTERN DIVISION**
11  **CYCLONE USA, INC.,**                  )
                                            )
12                  **Plaintiff,**          )   **Case No. CV 03-992 AJW**
                                            )
13              **v.**                      )   **MEMORANDUM OF DECISION**
                                            )   **REGARDING CYCLONE USA'S**
14                                          )   **MOTION FOR AN AWARD OF**
                                            )   **ATTORNEYS' FEES**
15  **LL&C DEALER SERVICES, LLC, et al.,**  )
                                            )
16                  **Defendant**           )
    _____ )
17
18                         **Background**
19       Following a bench trial, the Court issued a Memorandum of
20  Decision setting forth its findings of fact and conclusions of law as
21  to the twenty-one claims and counterclaims brought by Cyclone USA,
22  Inc. ("Cyclone USA"), LL&C Dealer Services, LLC ("LL&C"), and Sei Kim.
23  Thirteen of the twenty-one claims at issue arose from alleged
24  violations of the Lanham Act. [See generally Memorandum of Decision].
25  Cyclone USA filed a motion for attorneys' fees based on the Court's
26  findings regarding LL&C and Sei Kim's trademark infringement,
27  counterfeiting, federal unfair competition, and trade name
28  infringement. [Cyclone USA's Motion for Attorneys' Fees ("Cyclone
    USA's Motion")]. LL&C filed an opposition [LL&C's Opposition to

1   Cyclone's Motion for Attorney Fees ("LL&C's Opposition")][1], and Cyclone

2   USA filed a reply [Reply to LL&C's Opposition to Plaintiff's Motion

3   for Attorney Fees ("Cyclone USA's Reply")].

4                              **Legal Standard**

5      Cyclone USA contends that it is entitled to an award of

6   attorneys' fees pursuant to 15 U.S.C. § 1117. [Cyclone USA's Motion,

7   at 5-7]. Section 1117(a) provides:

8              When a violation of any right of the registrant

9              of a mark registered in the Patent and Trademark

10             Office, [or] a violation under section 1125(a) .

11             . . shall have been established in any civil

12             action arising under this chapter, the plaintiff

13             shall be entitled, . . . to recover (1)

14             defendant's profits, (2) any damages sustained by

15             the plaintiff, and (3) the costs of the action.

16             . . . The court in exceptional cases may award

17             reasonable attorney fees to the prevailing party.

18   15 U.S.C. § 1117(a). Section 1117(b) further provides, that in

19   assessing damages under subsection (a):

20             T]he court shall, unless the court finds

21             extenuating circumstances, enter judgement for

22             three times such profits or damages, whichever is

23             greater, together with a reasonable attorney's

24

25       [1]    Although Cyclone USA and LL&C have entered into a
26 settlement [see Dismissal of Claims and Permanent Injunction
Pursuant to Stipulation], Sei Kim joined in LL&C's Opposition [see
27 Joinder of Sei Kim in LL&C's Opposition to Cyclone's Motion for
Attorneys Fees], so the court will consider the arguments made by
28 LL&C as if they had been made by Sei Kim.

fee, in the case of any violation of section 1114(1)(a) or this title . . . that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).

The Court found that LL&C and Sei Kim violated Cyclone USA's rights under the Lanham Act. [Memorandum of Decision, at 4-31, 49-56]. The Court may award Cyclone USA attorneys' fees it incurred in litigating LL&C's and Sei Kim's infringement of the Tornado trademark, the two valid slogan trademarks ("Don't Drive Without It!" and "Under the Hood!"), and Cyclone USA's unregistered trade name ("Tornado Air Management Systems"), as well as LL&C's and Sei Kim's federal unfair competition under section 11125(a), if the Court finds that this is an "exceptional" case. <u>See</u> 15 U.S.C. § 1117(a). Further, Cyclone USA is entitled to the attorneys' fees it incurred in litigating its counterfeiting claims against LL&C and Sei Kim unless the Court finds "extenuating circumstances" that would preclude such an award. 15 U.S.C. § 1117(b).

**Discussion**

**1. Prevailing Party**

LL&C argues that Cyclone USA was not a "prevailing party". [LL&C's Opposition, at 1-2]. In support of its argument, LL&C cites California cases interpreting the "prevailing party" requirement in the context of state law claims. [LL&C's Opposition at 1-3]. However, "[t]he extent of [a] plaintiff's rights under the Lanham Act is a matter of Federal law." <u>Goodyear Tire & Rubber Co. v. H. Rosenthal</u>

<u>Co.</u>, 246 F. Supp. 724, 725 n.1 (D. Minn. 1965) (citing <u>L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.</u>, 214 F.2d 649 (3d Cir. 1954)). In the context of trademark infringement, the prevailing party for purposes of section 1117(a) "is the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1304-05 (11th Cir. 1999) (holding that a plaintiff who successfully obtained an injunction and nominal damages on its Lanham Act claim was a "prevailing party" for purposes of section 1117(a)) (internal quotations omitted). <u>See also</u> <u>Audi AG v. D'Amato</u>, 469 F.3d 534, 550-51 (6th Cir. 2006) (holding that a plaintiff who successfully obtained injunctive relief for trademark infringement was a "prevailing party" within the meaning of section 1117(a)). Here, the Court permanently enjoined LL&C and Sei Kim from further use of the Tornado trademark and the valid slogan trademarks [Dismissal of Claims and Permanent Injunction Pursuant to Stipulation; Permanent Injunction], and also determined that Cyclone USA was entitled to an award of LL&C's profits. [Memorandum of Decision, at 22-23, 53; October 28, 2009 Order]. Therefore, Cyclone USA is a prevailing party for purposes of section 1117(a).

**2.   Exceptional Case Requirement of Section 1117(a)**

Whether Cyclone USA may be awarded attorneys' fees under section 1117(a) turns on whether LL&C's and Sei Kim's conduct constituted an "exceptional case" of trademark infringement. "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." <u>Derek Andrew, Inc. v. Poof Apparel Corp.</u>, 528 F.3d 696, 702 (9th Cir. 2008)

1    (quoting <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1023
2    (9th Cir. 2002)). <u>See also</u> <u>Earthquake Sound Corp. v. Bumper Indus.</u>,
3    352 F.3d 1210, 1216 (9th Cir. 2003) ("A trademark case is exceptional
4    where the district court finds that the defendant acted maliciously,
5    fraudulently, deliberately, or willfully."). Further, "[w]illfulness
6    short of bad faith or fraud will suffice when equitable considerations
7    justify an award and the district court supportably finds the case
8    exceptional." <u>Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd.</u>,
9    282 F.3d 23, 32 (1st Cir. 2002); <u>Earthquake Sound Corp.</u>, 352 F.3d at
10   1217 (rejecting the notion that exceptionality requires egregious
11   culpability such as bad faith or fraud, and stating that "while a
12   finding that the losing party has acted in bad faith may provide
13   evidence that the case is exceptional, other exceptional circumstances
14   may warrant a fee award") (citations omitted).

15        In evaluating Cyclone USA's trademark infringement claims, the
16   Court determined that the infringement was willful.  With respect to
17   LL&C, the Court found that LL&C continued to infringe the Tornado
18   trademark

19             even though it understood that [its actions] were
20             forbidden by the contract between LL&C and
21             Cyclone USA [RT 471, 505, 1323], despite Cyclone
22             USA's demands that it stop [Ex.117; RT 178-80],
23             notwithstanding the provision in the contract
24             between LL&C and Sei Kim drawing LL&C's attention
25             to Cyclone USA's registration and ownership of
26             the Tornado trademark . . ., and despite Sei
27             Kim's urging that LL&C use a different trademark
28             in advertising and selling devices supplied by

1    him. [RT 151-52, 1444].

2    [Memorandum of Decision, at 7-8]. Remarkably, LL&C even fraudulently

3    attempted to register the term TornadoFuelSaver, "which it knew

4    perfectly well that it did not own, but falsely represented that it

5    did. [Ex. 221; RT 467-71]." [Memorandum of Decision, at 21].    The

6    Court also found that Sei Kim had knowingly and willfully infringed

7    the Tornado trademark. Specifically, the Court noted that:

8             Sei Kim also knew, or reasonably should have

9             known that LL&C was engaging in trademark

10            infringement. By the time he entered into the

11            contract with LL&C, Sei Kim knew that Cyclone USA

12            had registered the Tornado trademark in its own

13            name. [Ex. 119, § 6.1; RT 143-44, 147, 1436].

14            Sei Kim also knew that LL&C intended to market

15            his devices using Cyclone USA's Tornado trademark

16            or confusingly similar variations thereof, such

17            as TornadoFuelSaver. Despite his knowledge of

18            LL&C's wrongful conduct, Sei Kim continued to

19            supply devices to LL&C. [RT 1425]. Sei Kim even

20            stamped some of the devices he supplied to LL&C

21            with the Tornado trademark himself. [RT 1424].

22            That makes him a direct, rather than merely a

23            contributory, infringer and counterfeiter.

24   [Memorandum of Decision, at 50-51].

25       LL&C and Sei Kim used the infringing marks in selling the same

26   type of product to the same category of customers, causing widespread

27   customer confusion and wrongfully appropriating sales that otherwise

28   would have been made by Cyclone USA. [Memorandum of Decision, at 7-

10].  And they did so to capitalize on the goodwill of Cyclone USA and to shirk the expense of taking steps to avoid infringement. [Memorandum of Decision, at 8-9].

The facts of this case are similar to those in Earthquake Sound Corp., in which the Ninth Circuit affirmed award of attorneys' fees under section 1117(a).  There, the court found that exceptional circumstances existed where the defendant continued its use of the trademark "Carquake" for car audio products despite having received multiple cease and desist letters with respect to plaintiff's "Earthquake" trademark for the same products. Earthquake Sound Corp., 352 F.3d at 1213-14.  As the Ninth Circuit concluded: "The total picture in this case is one of deliberate, willful infringement, and the district court did not err in awarding Earthquake its attorney's fees." Earthquake Sound Corp., 352 F.3d at 1219.

Because LL&C and Sei Kim engaged in egregious, willful, and deliberate infringement of the Tornado trademark, this is an exceptional case and Cyclone USA is entitled to an award of attorneys' fees under section 1117(a).[2]

**3.  Extenuating Circumstances Under § 1117(b)**

Cyclone USA also contends that it is entitled to attorneys' fees under section 1117(b).  LL&C responds that there are extenuating circumstances mitigating against such an award. [LL&C's Opposition at

---

[2]     LL&C's reliance on Competition Specialties, Inc. v. Competition Specialties, Inc., 87 Fed. Appx. 38 (9th Cir. 2004) is misplaced.  That case "may not be cited to the courts of this circuit...."  See U.S. Ct. of App. 9th Cir. R. 36-3.

7-9].

Courts have construed the extenuating circumstances exception narrowly. See Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1314 (9th Cir. 1997) ("The phrase 'extenuating circumstances' is not defined in the Lanham Act. However, the exception is extremely narrow."). See also Louis Vitton S.A. v. Lee, 875 F.2d 584, 588 (7th Cir. 1989) ("Section 1117(b) is a severe statute. The trebling of the plaintiff's damages or the defendant's profits - whichever is greater - is mandatory ..., subject only to the statute's exception for 'extenuating circumstances,' which as we shall see is extremely narrow.").

The legislative history of section 1117(b) also suggests that the exception should be applied sparingly, and only in "highly unusual" instances, such as "when the defendant is an unsophisticated individual, operating on a small scale, whose conduct posed no risk to the public's health or safety, and for whom the imposition of treble damages would mean that he or she would be unable to support his or her family." Joint Statement, 130 Cong. Rec. at H12083.

Extenuating circumstances plainly are not present in this case. Both LL&C and Sei Kim operated sophisticated business on a large scale. Morever, to the extent that LL&C's argument is based on its weak financial condition [LL&C's Opposition at 9], that argument is not relevant to the award of attorneys' fees against Sei Kim. Finally, Sei Kim has not presented evidence that his financial condition is so weak as to make an award of attorneys' fees unjust.

LL&C contends that Cyclone USA had unclean hands or that LL&C somehow acted in good faith. [LL&C's Opposition, at 7-8]. While Cyclone USA's conduct was not exemplary in all respects, the Court

already has rejected LL&C's unclean hands defense, partly because any misconduct by Cyclone USA was dwarfed by the willful infringement, counterfeiting, and unfair competition committed by LL&C and Sei Kim, both of whom deliberately choose to cash in on Cyclone USA's goodwill. [Memorandum of Decision, at 13-14, 52].

Therefore, there are no extenuating circumstances that would preclude an award of reasonable attorneys' fees under section 1117(b).

**4.   Ropers, Majeski, Kohn & Bentley**

LL&C contends that Cyclone USA should be not be entitled to any of the attorneys' fees incurred by Ropers, Majeski, Kohn & Bentley, since the firm was retained by Cyclone USA to defend against the counterclaims filed by LL&C, KIDC, and Sei Kim, rather than to pursue Cyclone USA's own claims. [LL&C's Opposition, at 9]. However, Cyclone USA prevailed on LL&C's counterclaim for judicial cancellation under 15 U.S.C. § 1064(3) as to the Tornado trademark and two of the three disputed slogan trademarks. [See Memorandum of Decision, at 60-81]. Therefore, the issue is whether Cyclone USA is entitled to its attorneys' fees as the prevailing defendant on LL&C's judicial cancellation counterclaim as to those marks.

The circuits are divided on the issue of whether to apply differing standards to prevailing plaintiffs and prevailing defendants in trademark infringement cases. See 5 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:101 (4th ed. 2008). The Ninth Circuit has held that attorneys' fees in trademark cases must be awarded pursuant to an evenhanded standard. Stephen W. Boney, Inc. v. Boney Servs., Inc., 127 F.3d 821, 826 (9th Cir. 1997) (applying the Supreme Court's ruling in Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994), a copyright case, to trademark cases). As discussed above, "[g]enerally, a

trademark case is exceptional for purposes of an award of attorney's fees [under section 1117(a)] when the infringement is malicious, fraudulent, deliberate, or willful." Stephen W. Boney, Inc., 127 F.3d at 825-26.

In articulating what circumstances may qualify as "exceptional," the Ninth Circuit stated:

> Bad faith of one of the parties may be part of those exceptional circumstances warranting a fee award under section 35(a). When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorneys' fees to the defendant. . . . [A]fter Fogerty, the standard . . . under which bad faith or other malicious conduct satisfies the exceptional circumstances requirement, applies to both prevailing plaintiffs and prevailing defendants seeking attorney's fees under the Lanham Act.

Stephen W. Boney, Inc., 127 F.3d at 827 (internal citations and quotations omitted).

The length of the Court's discussion of cancellation in its Memorandum of Decision, as well as the Court's prior order suggesting the possibility of cancellation [see Order Denying Plaintiff's Motion for Preliminary Injunction, at 11], make it clear that LL&C did not seek cancellation in bad faith, and Cyclone USA does not suggest otherwise. However, in describing what circumstances may qualify as "exceptional," the Ninth Circuit was careful to note that "the mere absence of bad faith on [the

plaintiff's] part does not render [the defendant] ineligible for attorneys fees. While a finding that the losing party has acted in bad faith may provide evidence that the case is exceptional, other exceptional circumstances may warrant a fee award." Stephen W. Boney, Inc., 127 F.3d at 827 (internal citation omitted). Therefore, the Court may award Cyclone USA the attorneys' fees it incurred in defending against LL&C's cancellation counterclaim if other exceptional circumstances warrant such an award.

The Lanham Act provides protection for unregistered as well as registered marks. Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998) ("Registration is not a prerequisite for protection under § 43(a), but courts look to the general principles qualifying a mark for registration under § 2 when determining whether an unregistered mark is protectable under § 43(a).") (internal citations omitted); New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1198 (9th Cir. 1979) ("To recover for a violation of [section 1125(a)] it is not necessary that a mark or trade-mark be registered."). Therefore, Cyclone USA's trademarks might have been protected even if LL&C had prevailed on its cancellation counterclaim, since section 1125(a) provides statutory protection and the same monetary relief for unregistered trademarks, including awards of treble damages, as it does for registered marks. See Trademark Law Revision Act of 1988; Pub. L. 100-677, 102 Stat 3935 (effective Nov. 16, 1989) (adding a reference to § 43(a) to the introductory clause of § 35); 5 J. Thomas McCarthy, Trademarks and Unfair Competition § 27:23 (4th ed. 2008) ("Under the 1988 Trademark Law Revision Act, a § 43(a) plaintiff can recover all § 35 remedies."). However, cancellation would have increased Cyclone USA's litigation burden

significantly, since it would have had to prove validity and ownership in addition to infringement, without the benefit of any presumptions. See Donchez v. Coors Brewing Co., 392 F.3d 1211, 1216 (10th Cir. 2004) (stating that the holder of an unregistered mark has the burden of demonstrating that the work is protectable under section 43(a)); 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:14 (4th ed. 2008).

"Under the Lanham Act, an award of attorney's fees is within the district court's discretion." Stephen W. Boney, Inc., 127 F.3d at 825. In finding in favor of Cyclone USA on LL&C's cancellation counterclaim, the Court relied on the incontestable status of the Tornado trademark, and explicitly declined to further address the issue of ownership.[3]  Cyclone USA's success on LL&C's cancellation counterclaim was central to the success of its own claims under the Lanham Act, including its counterfeiting claims, as to which Cyclone USA is presumptively entitled to an award of attorneys' fees, and as to which the "exceptional case" requirement does not apply.  It also was central to Cyclone USA's success on its claims against Sei Kim under the Lanham Act, and on Sei Kim's counterclaim for declaratory relief regarding trademark ownership.  Further, some of the

_____

[3] Specifically, the Court noted:
> Because the Court has declined to cancel Cyclone USA's incontestable registration of the Tornado trademark, there is a conclusive presumption that Cyclone USA owns that trademark. See 15 U.S.C. § 1115(b). Therefore, further discussion of the ownership of that trademark is unnecessary. In particular, it unnecessary to address the framework for resolving disputes regarding trademark ownership between manufacturer and distributor applied in Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1220 (9th Cir. 1996).

[Memorandum of Decision, at 76 n.81].

counterclaims alleged by LL&C and Sei Kim were predicated at least in part upon Cyclone USA's alleged infringement of LL&C's and Sei Kim's rights in the trademarks which they contended that they owned, but which the Court ultimately found were owned by Cyclone USA. Accordingly, the Court exercises its discretion to award Cyclone USA the attorneys' fees incurred by Ropers Majeski Kohn & Bentley in successfully defending against LL&C's cancellation counterclaim.

**5. Apportionment to Non-Lanham Act Claims**

This case involved some non-Lanham Act claims. For example, Cyclone USA asserted a breach of contract claim against LL&C, LL&C asserted fraud and breach of contract claims against Cyclone USA, and Cyclone USA and Sei Kim sued each other for breach of contract. In addition, the parties also asserted state law unfair competition claims against one another. Not surprisingly, LL&C argues that apportionment of some of Cyclone USA's attorneys' fees to these claims and counterclaims is warranted. [LL&C's Opposition, at 10-11].

The general rule is "[u]nder 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act." U.S. Structures, Inc. v. J.P. Structures, Inc., 130 F.3d 1185, 1193 (6th Cir. 1997). Notwithstanding this general rule, "in a specific case apportionment might not be required if 'it is impossible to differentiate between work done on claims.' . . . . In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." Gracie v. Gracie, 217 F.3d 1060, 1069-70 (9th Cir. 2000).

That is the situation in this case. Although this case involved a variety of claims, including some as to which Cyclone USA would not

ordinarily be entitled to recover its attorneys' fees under the Lanham Act, a meaningful apportionment would be impossible for at least three reasons. First, although Cyclone USA's Lanham Act claims were the heart of this case, LL&C's cancellation counterclaim, Sei Kim's declaratory relief counterclaim, and LL&C's and Sei Kim's Lanham Act counterclaims were intertwined with Cyclone USA's Lanham Act claims. Second, the inherent interrelationship and factual overlap among Cyclone USA's Lanham Act claims and the non-Lanham Act claims and counterclaims alleged by the parties was substantial. Third, LL&C's and Sei Kim's approach to this case, which involved attempting to use actual or alleged violations of federal or state law by Cyclone USA or Jay Kim as the basis for defenses to Cyclone USA's Lanham Act claims or as support for LL&C's cancellation counterclaim, deepened the inherent interrelationship and overlap among the Lanham Act claims and the non-Lanham Act claims and counterclaims alleged in this case. This strategy made virtually every aspect of Cyclone USA's and Jay Kim's relationship with LL&C and Sei Kim relevant to the Lanham Act claims.

For example, the efforts Cyclone USA devoted to defending some of the non-Lanham Act counterclaims asserted against it by LL&C and Sei Kim contributed to building a factual record warranting rejection of LL&C's cancellation counterclaim and LL&C's and Sei Kim's unclean hands defenses to Cyclone USA's Lanham Act claims. The fact that Cyclone USA did not prevail on every counterclaim does not matter. See generally Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the district court did not adopt each contention raised.");

_Cabrales v. County of Los Angeles_, 935 F.2d 1050, 1052 (9th Cir. 1991)("We read _Hensley_ as establishing the general rule that plaintiffs are to be compensated for attorneys' fees incurred for services that contribute to the ultimate victory in the lawsuit. Thus, even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributed to the success of other claims.").

In the circumstances of this case, attempting to allocate attorneys' fees among particular claims would be infeasible. Nevertheless, as discussed below, Cyclone USA has reduced the hours claimed to eliminate time that plainly was devoted only to matters bearing no relationship to the Lanham Act claims. Based on the Court's review of the underlying documentation, imposing a further reduction on this ground would be arbitrary and unrealistic.

**6.  Reasonableness of Hourly Rates and Time Spent**

Attorneys' fee awards ordinarily are calculated using the lodestar method. See _Intel Corp. v. Terabyte Int'l_, 6 F.3d 614, 622 (9th Cir. 1993). "In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." _Gracie_, 217 F.3d at 1070 (quoting _Frank Music Corp. v. Metro-Goldwyn Mayer, Inc._, 886 F.2d 1545, 1557 (9th Cir. 1989)).

Overall, the hourly rates requested by Cyclone USA are well below the market rates for similar services. [_See_ Declaration of Timothy L. Skelton, paras. 5, 6, 13]. Even LL&C's expert conceded the rates of Cyclone USA's counsel are reasonable, and did not suggest any reduction. [_See_ Declaration of Andre E. Jardini, para. 21]. Because the Court agrees that the hourly rates requested by Cyclone USA are

reasonable, it adopts them.

Cyclone USA provided copious documentation substantiating the number of hours worked for which attorneys' fees are claimed. The documentation is of sufficient quality and quantity to allow the Court to scrutinize work performed and the hours expended. The Court has reviewed those records for the purpose of determining whether the number of hours claimed is reasonable.

Cyclone USA requests attorneys' fees in the amount of $148,624 incurred for the services of Darin Dominguez, a sole practitioner who represented Cyclone USA and Jay Kim for many years, as well as the services of Michael Murphy, Mr. Dominguez's paralegal. [Cyclone USA's Reply, at 16].   LL&C contends that Mr. Dominguez is not entitled to compensation for his services. [LL&C's Opposition, at 16-17].

As Cyclone USA acknowledges, "Mr. Dominguez does not have expertise in trademark litigation," which is why he ultimately looked to the Arent Fox firm, and later the Ropers, Majeski, Kohn & Bentley firm, to take a lead role in the case. [Declaration of Mark A. Schadrack, para. 20]. In addition, Cyclone USA maintains that Mr. Dominguez "provided valuable assistance" and "critical support with respect to preparation of witnesses for depositions and trial...." [Supplemental Declaration of Mark A. Schadrack, paras. 3, 4]. The Court agrees. Neither the fact that Mr. Dominguez was wise enough to associate counsel with trademark expertise when the dispute escalated, nor the fact that he remained involved to help when he could, thereby enabling other counsel to draw upon his longer-term relationship with Cyclone USA and his familiarity with Cyclone USA's business and its relationships with LL&C and Sei Kim (which likely improved the overall efficiency of Cyclone USA's legal team), suggests that the hours he

worked were unproductive.

On the other hand, Cyclone USA has substantially reduced the attorneys fees sought for work performed by Mr. Dominguez, dropping it from $206,537 to $148,624 (a decrease of approximately 28 percent). [Cyclone USA's Reply, at 8-9, 16].  In the circumstances, the Court concludes that the adjustment Cyclone USA has made is sufficient, and that the attorneys' fees it seeks in respect of the work performed by Messrs. Dominguez and Murphy are reasonable.

The analysis and opinions provided by LL&C's expert regarding the attorneys fees, Andre E. Jardini, have been carefully considered. Although Mr. Jardini's background and experience sound impressive, the quality of his performance in this case has not measured up. His opinion is rejected for several reasons, of which the following are merely examples.

First, Mr. Jardini made numerous errors.  Some of these were simply mistakes of a clerical nature, perhaps understandable in light of the complexity of this case. Others, however, reflect either an unfamiliarity with trademark litigation or a lack of understanding concerning the interrelationships among the claims, counterclaims, and defenses involved in this case and the manner in which this case was litigated. Whether this is entirely his fault is unclear. Nevertheless, it indicates that the foundation for his opinions is unsound.  Since many of Mr. Jardini's errors already are amply documented in the record, they need not be reiterated here. [See Cyclone USA's Reply at 6-7, 9-15].

Second, while Mr. Jardini's concern about the inefficiency of numerous timekeepers may be legitimate in some cases [see Declaration of Andre E. Jardini, para. 36], the use of temporarily assigned

attorneys to perform spot legal research or other discrete tasks, as
apparently was done in this case, does not necessarily warrant a
reduction.  Further, when a complex case lasts for several years and
is handled by more than one law firm, personnel transitions are to be
expected.  This is simply an unavoidable fact of life in today's legal
marketplace, not an indication of irrational or wasteful staffing
practices.

Third, the conclusion reached by Mr. Jardini - that Cyclone USA
should recover merely $128,924.50 in attorneys' fees [Declaration of
Andre E. Jardini, para. 74] - is ridiculous on its face for a hard-
fought case of the duration, magnitude, and complexity of this one.
The mere fact that his analysis could lead him to such a preposterous
conclusion demonstrates that Mr. Jardini's opinion is deeply flawed
and deserves little, if any, weight.

Despite the flaws in Mr. Jardini's analysis, and notwithstanding
the absurd conclusion he reached, Cyclone USA examined Mr. Jardini's
criticisms of Cyclone USA's attorneys' fees claim and reduced the
amount claimed in an effort to take some of those criticisms into
account. [Cyclone USA's Reply, at 16; Supplemental Declaration of Mark
A. Schadrack, paras. 3-5].  Cyclone USA also attempted to segregate
the attorneys' fees attributable to its Lanham Act claims from work
performed in respect of other claims or in respect of defenses to non-
Lanham Act counterclaims, such as LL&C's and Sei Kim's breach of
contract and fraud claims, and to seek recovery only for the former
and not for the latter. [Cyclone USA's Reply, at 16; Supplemental
Declaration of Mark A. Schadrack, paras. 6; Declaration of Timothy L.
Skelton, para. 14].  In this case, that was a difficult endeavor
because, as previously discussed, the claims and counterclaims

asserted by the parties were inherently deeply intertwined and the strategy of LL&C and Sei Kim, which involved attempting to use Cyclone USA's and Jay Kim's actual or alleged violations of state and federal law - including alleged breach of contract, fraud, and false patent making - as defenses to Cyclone USA's Lanham Act claims and as support for LL&C's cancellation counterclaim and Sei Kim's declaratory judgment counterclaim, made meaningful segregation challenging. Nevertheless, Cyclone USA attempted to do what it could in the circumstances, and the Court has not identified any instance in which it should have gone even further.

In seeking an award of attorneys' fees, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. 424 at 434. Cyclone USA has fulfilled that obligation. Cyclone USA made a conscientious effort to reduce the amount of its attorneys' fees claim by excluding time that is arguably inadequately documented or described, duplicative, or attributable to matters meaningfully segregable from its Lanham Act claims. The Court does not believe that further reductions are either necessary or justifiable. After these deductions, which resulted a decrease of $360,205 (or roughly 15 percent) in the amount of attorneys' fees initially sought by Cyclone USA [see Cyclone USA's Reply, at 16], the number of hours ultimately claimed by Cyclone USA is reasonable in light of the nature, complexity, and duration of this bitterly contested case.

1

**Conclusion**

2          For the foregoing reasons, the amount of attorneys' fees

3    awarded in the October 28, 2009 order is appropriate.

4

5    DATED: May 24, 2010

6

7                                    _____
                                     ANDREW J. WISTRICH
8                                    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28