UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CYCLONE USA, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. CV 03-992 AJW |
| | ) |
| v. | ) MEMORANDUM OF DECISION |
| | ) REGARDING CYCLONE USA'S |
| | ) MOTION FOR FURTHER ACCOUNTING |
| LL&C DEALER SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**Background**

This case was tried to the Court sitting without a jury. After the Court issued its ruling on liability, Cyclone USA filed a motion for a further accounting of profits [Cyclone USA's Brief Regarding Further Accounting ("Cyclone USA's Brief")], LL&C filed an opposition [LL&C's Opposition to Cyclone USA's Request for Profits and Prejudgment Interest of Profits ("LL&C's Opposition")],[1] and Cyclone USA filed a reply. [Plaintiff's Reply to LL&C's Brief Regarding the Further Accounting ("Cyclone USA's Reply")]. Since the Court already

---

[1] Although Sei Kim did not file an opposition to Cyclone USA's request for a further accounting, he indicated during the hearing on that request that he intends to rely on the arguments made by LL&C.

has determined that Cyclone USA is entitled to a further accounting of LL&C's profits, only the amount is at issue. [Memorandum of Decision, at 22; see also Memorandum of Decision, 49-51, 53 (regarding Sei Kim)]. Even LL&C concedes that the profits attributable to its Lanham Act violations during the period 2004-2007 are at least $311,477.00. [Declaration of Barbara Luna, at 2, 7].

**Legal Standard**

In computing a defendant's profits for violations of the Lanham Act, "both the language of Section 1117 and the case law indicate that the defendant has the burden of proof as to any deductions from his gross sales." Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 124 (9th Cir.), cert. denied, 391 U.S. 966 (1968) (citation omitted); 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). Although not all costs are deductible, allowable deductions include items such as overhead and most operating expenses. See W.E. Basset Co. v. Revlon, Inc., 435 F.2d 656, 665 (2d Cir. 1970); 5 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:66 (4th ed. 2008). "Any doubts about the actual amount of profits will be resolved against the infringer." H-D Michigan Inc. v. Biker's Dream, Inc., 48 U.S.P.Q. 2d 1108, 1113 (C.D. Cal. 1998), aff'd in part, appeal dismissed in part, 230 F.3d 1366 (9th Cir. 2000) (citing Louis Vuitton, S.A. v. Spencer Handbag Corp., 765 F.2d 966, 972-73 (2d Cir. 1985)).

**1.  LL&C's Attorney's Fees**

LL&C maintains that if the legal fees it expended in litigating this action are taken into account, "LL&C clearly would not have had any 'net' profit." [LL&C's Opposition, at 2-3]. However, attorneys'

2

1  fees and associated expenses incurred by an infringer in
2  unsuccessfully defending against a trademark infringement claim are
3  not deductible when calculating an infringer's profits, even though
4  such expenses are directly related to the sale of the infringing
5  goods. <u>Wolfe v. Nat'l Lead Co.</u>, 272 F.2d 867, 873 (9th Cir. 1959)
6  (finding that the attorneys' fees and costs paid by the defendant in
7  connection with the trademark infringement litigation were not proper
8  deductions), <u>cert. denied</u>, 362 U.S. 950 (1960) <u>overruled in part on
9  other grounds by</u> <u>Maier Brewing Co. v. Fleischmann Distilling Corp.</u>,
10 359 F.2d 156 (9th Cir. 1966); <u>Maltina Corp. v. Cawy Bottling Co.,
11 Inc.</u>, 613 F.2d 582, 586 (5th Cir. 1980) (finding that the legal fees
12 arising from the defendant's infringement "would not be allowable in
13 any case"); <u>Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing,
14 Inc.</u>, 2003 WL 22331254, *24 (N.D. Ga. 2003) (refusing to allow a
15 deduction for defendant's attorneys' fees; reasoning that "[a]
16 contrary holding would allow a defendant to act with willful blindness
17 in purchasing counterfeit products and make a profit by selling those
18 products, but force the innocent trademark holder to bear the expense
19 of legal action caused by the purchase of the products"). Even LL&C's
20 expert excluded the legal fees related to this litigation from LL&C's
21 claimed deductible expenses "in order to determine LL&C's true
22 profitability on the Tornado products." [Declaration of Dr. Barbara
23 Luna, at 4]. Accordingly, attorneys' fees and associated expenses
24 incurred by LL&C litigating this action are not deductible for the
25 purpose of computing LL&C's net profit on infringing sales during the
26 period 2004-2007.
27
28 **2.   Salaries of the Two Members of LL&C**

1  LL&C contends that no salaries for either of the two members of
2  LL&C were deducted from the profit and loss statements. It argues that
3  the calculation of its net profits is greater than it would be if LL&C
4  was a legal entity that paid salaries to its officers rather than a
5  limited liability company that merely distributed profits. [LL&C's
6  Opposition at 3].

7  There is authority supporting the deduction of reasonable
8  salaries for the officers or principals of a corporation in computing
9  an infringer's profits, at least under some circumstances. See, e.g.,
10 Wolfe v. Nat'l Lead Co., 156 F. Supp. 883, 892 (N.D. Cal. 1957)
11 ("Provided the salaries are reasonable and the recipients are in fact
12 doing the work for which they are paid, corporate salaries should be
13 allowed regardless of whether they were paid to the dominant
14 personalities of the corporation."), aff'd, 272 F.2d 867 (9th Cir.
15 1959), cert. denied, 362 U.S. 950 (1960). See also Clair v. Kastar,
16 Inc., 70 F. Supp. 484, 487-88 (S.D.N.Y. 1946) (holding that in the
17 context of calculating profits in cases of patent infringement,
18 "salaries to officers in payment of services rendered will be allowed
19 as a credit, but only if such salaries are reasonable in amount and
20 are not a distribution of profits in disguise"). However, LL&C has not
21 offered any basis upon which a reasonable salaries for the two
22 principals of LL&C might be calculated. Therefore, the Court makes no
23 deduction for the salaries of LL&C's principals.

24 **3.  LL&C's 2005 Loss**

25 LL&C argues that LL&C's net profit for the period from 2004-2007
26 should take into account a loss LL&C realized in 2005. LL&C's expert
27 says this loss amounted to $61,366. [Declaration of Dr. Barbara Luna,
28 Ex. B]. The Ninth Circuit, however, has rejected the proposition that

4

such a loss is an allowable deduction when computing a trademark infringer's profits. Wolfe v. Nat'l Lead Co., 272 F.2d at 870 ("The owner of the patent, in holding the infringers to an accounting, is not confined to all or nothing. There may be an acceptance of transactions resulting in a gain with a rejection of transactions resulting in a loss. Upon a statement of an account, a patentee is not looked upon as a quasi-partner of the infringers, under a duty to contribute to the cost of the infringing business as a whole. He is the victim of a tort, free at his own election to adopt what will help and discard what will harm. The principle applies in trademark cases.")(quoting Duplate Corp. v. Triplex Safety Glass Co., 298 U.S. 448, 458 (1936))(internal quotations and citations omitted).

Other circuits have allowed infringers to offset unprofitable years against profitable ones in accounting for the net profits received during a period of trademark infringement, relying on the broad discretion conferred on district courts by the Lanham Act to fashion damages according to the specific circumstances of the case. See, e.g., Burger King Corp. v. Mason, 855 F.2d 779, 782-83 (11th Cir. 1988). However, while Wolfe has been overruled on other grounds by Maier Brewing Co. v. Fleischmann Distilling Corp., 359 F.2d 156 (9th Cir. 1966), aff'd, 386 U.S. 714 (1967), it nevertheless remains controlling Ninth Circuit law on the specific issue of whether an infringing party is entitled to use its losses to offset its profits obtained from trademark infringement. Therefore, LL&C is not entitled to offset the loss it realized in 2005.

**4. Royalty Income and Dividend Income**

LL&C's expert maintains that Cyclone USA's expert erred by including royalty income of $511 for the year 2007 as well as dividend

5

income amounting to $1,334 for the period of 2004-2007. [Declaration of Barbara Luna, at 5]. Cyclone USA's expert, Daryl Martin, has conceded the issue and adjusted LL&C's net profits accordingly. [Supplemental Declaration of Daryl Martin, at l2]. Therefore, the Court need not address the issue.

**5.    LL&C's Entertainment and Fuel Expenses**

LL&C contends that plaintiff's expert erred by failing to deduct certain entertainment and fuel allegedly incurred by LL&C when calculating LL&C's net profit. [Declaration of Barbara Luna, at 6]. Specifically, LL&C's expert says that entertainment expenses of $13,259 and fuel expenses of $22,161 were excluded by plaintiff's expert because "the reference for the expense items in LL&C's Detail Transaction Reports was not to his liking." [Declaration of Barbara Luna, at 6]. LL&C's expert adds that "Martin did not request an explanation for the nature of the expenses and or their business purpose or any supporting documentation." (Declaration of Barbara Luna, at 6].

The reasoning employed by LL&C's expert rests on the assumption that it is Cyclone USA's duty to request documentation or information supporting LL&C's claimed entertainment and fuel expenses. That assumption, however, is false. "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Therefore, once Cyclone USA has met its burden of proving LL&C's revenues, the burden of proving any costs or deductions claimed falls on the shoulders of LL&C. H-D Michigan Inc., 48 U.S.P.Q. 2d at 1113 & 1115 (refusing to deduct certain claimed expenses where the cost information provided by the infringer was "incomplete and

6

contradictory"). On the present record, LL&C has not provided any documentation to support its calculation of its entertainment or fuel expenses. Because doubt as to the amount and deductibility of an infringer's expenses should be resolved against the infringer, LL&C is not entitled to a deduction for these claimed expenses.

**6.  Legal Fees for Van Dorn & Marshak**

The Court similarly rejects LL&C's contention that an additional $6,142 of attorneys' fees LL&C paid to the firm of Van Dorn & Marshak should have been deducted from its profits. [Declaration of Barbara Luna, at 6]. LL&C has not met its burden of proving the amount of attorneys fees paid to that firm for work performed relating to litigating this action. No time slips or invoices reflecting the hours Van Dorn & Marshak spent on this case were provided. The testimony of LL&C's principal that the fees related to this litigation comprised only a "very small amount" of the total attorneys fees paid to that firm is not sufficient to satisfy LL&C's burden of persuasion. See H-D Michigan Inc., 48 U.S.P.Q. 2d at 1113. Therefore, the Court adopts the conclusion of Cyclone USA's expert with respect to the legal fees of Van Dorn & Marshak.

**7.  Apportionment Analysis**

LL&C's expert criticizes the methodology Cyclone USA's expert employed in apportioning LL&C's profits among infringing and non-infringing sales. [Declaration of Barbara Luna, at 5]. Cyclone USA's expert adjusted LL&C's net profits by apportioning revenues and costs between Tornado and non-Tornado devices. [Cyclone USA's Reply, at 8-9]. The method he used – the "sales ratio" approach – is proper. See Wolfe, 272 F.2d at 871-872. Although a plaintiff is not entitled to profits demonstrably not attributable to the infringement, the burden

of apportioning profits among infringing non-infringing sales falls on the infringer. <u>Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.</u>, 316 U.S. 203, 206-07 (1942) ("The burden is the infringer's to prove that his infringement had no cash value in sales made by him."). <u>See also</u> <u>Wynn Oil Co. v. Am. Way Serv. Corp.</u>, 943 F.2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning the profits should be placed on the defendants."). The methodology employed by Cyclone USA's expert is reasonable, consistent with Ninth Circuit authority, and conservative in the circumstances (considering the use of Cyclone USA's trademarks by LL&C in selling non-fuelsaver products). LL&C has failed to demonstrate that Cyclone USA's analysis exaggerates the profits LL&C obtained from its violations of the Lanham Act. Therefore, the Court adopts the apportionment proposed by Cyclone USA.

**8.  Opportunity Interest**

With respect to the calculation of opportunity interest, Cyclone USA's expert has agreed that the rate of interest used in 2003 should have been 1.02% rather than 1.07%. (Supplemental Declaration of Daryl Martin, at 10]. Because the parties are in agreement, the Court need not consider the issue further.

**Conclusion**

Cyclone USA's request for a further accounting as to LL&C's profits for the period of 2004-2007 is meritorious, and its calculation of the amount of those profits, is adopted as reflected in the October 28, 2009 order.

DATED: May 24, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge